Good morning, and may it please the Court. Andrew Kennedy on behalf of Petitioner Appellant Demeko Holland. I'm going to try to reserve two minutes for rebuttal. Just watch the clock, Counsel. Yeah, we'll see how that goes. Your Honors, this case is a manifestation of the concern espoused by the Supreme Court in Miranda that a suspect, unaware of his rights, will unwittingly speak with authorities and in doing so will produce evidence that serves to convict him. And let there be no mistake, that's precisely what happened here. The statements that Mr. Holland made were essentially the sine qua non of his conviction. Without those, I think it's unlikely that he would have even been charged with this crime, much less convicted of it. But was he pressured? Was he coerced? Well, I think there is a subliminal coercion in the sense that Mr. Holland was not in a position to waive his rights. There were several different factors, a constellation of which produced a situation where Mr. Holland did not understand his rights and was not in a position to waive them. Counsel, for me it would be helpful if you could focus at some point on why you think the State Court decision is objectively unreasonable. Sure. I think the foremost reason why the State Court decision is objectively unreasonable is that the State Court didn't even consider the fact that at the time that Mr. Holland made these statements, he had told the authorities that at approximately the time when he was advised of his rights, he was blacked out. He was not forming memories. This wasn't an issue of weeks later, days later, months later, a subject comes back and says, oh no, I don't remember being read my rights. He told them at the time they were soliciting statements from him, I was blacked out by then. I don't remember what happened. And that's only one of several factors that went into the fact that the police should have known that Mr. Holland was not aware of his rights. But wasn't it kind of a selective blackout? He certainly remembered some details very well. Well, Your Honor, I'm going to be the first to admit I've never done SHRM before. I presume no one in this Court has either. So I couldn't tell you when someone blacks out on SHRM and when someone doesn't. You know, I don't even know what SHRM is. To be honest, I didn't either before this case. But according to what I've learned, it's marijuana and PCP in some sort of combination. But my understanding is that it does cause blackouts. And, yes, he did provide details to the police that could indicate that he had some recollection of different things that happened that day. Was there any medical testimony to corroborate the effect that he claimed from the SHRM cigarettes? I don't believe there was specific medical testimony at this hearing, but it is a fact that SHRM does produce blackouts. I read that he had THP and PCP in his system, but I didn't read anything about what the level was or whether that level would be expected to correspond with blackouts. There was no evidence presented to that effect, was there? I don't believe there was specific evidence about the exact consequences of these drugs. But I don't think that's all that important here in the fact that this is essentially tantamount to a subject telling the authorities when they say, do you understand these rights as I've read them to you, to him saying no, or to someone indicating that they don't speak English or something like that when authorities are reading their rights. To a degree, it's not even as important whether or not he was blacked out as it was the fact that he indicated to the authorities that he was blacked out. Isn't there a problem? Because he had provided information to the authorities that proved to be false and he later acknowledged was false, right? Such as that he was simply out jogging? No, he gave a false name and gave his brothers information rather than his own and then reluctantly, as I read the record, reluctantly admitted, yeah, that wasn't true. Here's what the truth is. So the question is, do the police have to believe what he says? I don't think that it's so much that the police have to believe what he says. I think it's more the fact that it's putting them on notice of this situation. And you also have to view it in light of all the other factors that were present here. And the fact is that the police obviously had an indication that there was something going on with him. There's testimony about his erratic behavior. They actually solicited the drug test that was done, which normally isn't something that's done. The police don't say, well, we want to know what kind of drugs these people were on before we interrogate them. But at the end of the day, it's whether they believe him or not. I think there's a very simple solution here, and that's that they can say, hold on, let's wait a second and make sure that this person does know and understand his rights. When there's this clear ambiguity about whether he knows these rights that he's trying to waive, there has to be some sort of obligation on the police to make sure that he is knowingly, intelligently, and voluntarily waiving these rights before proceeding. What was the reasoning? I know you disagree with him, but what was the crux of the reasoning of the state appellate court? I think the crux of the reasoning of the state appellate court was that they did not believe that he was not understanding his rights at the time that they were read to him. That they believed, as Your Honors have intimated, that maybe it was kind of a feigned blackout, that he wasn't really blacked out at the time. But again, we're all just supposing this. As Your Honors have said, we don't have the medical testimony. All we have is the objective facts, such as his erratic behavior, the fact that these drugs do cause blackouts such as this, and the fact that that's what he told the police had happened. Let's assume that we have a different slant on the underlying facts than the trial court or the appellate court. What makes their findings objectively unreasonable? I think the most important thing that makes their findings objectively unreasonable is the fact that they didn't consider the close proximity of the blackout to, what he said was the blackout to when the rights were read. That subject wasn't really evaluated. That begs the question a little bit, because they're not buying into the blackout. They're saying, no, he was evasive, right? Well, I don't necessarily think that they found that he didn't black out. They just found that he had been read his rights and that he said, yes, he understood them. They did say that, I mean, the government did argue that he might not actually have been blacked out, but I don't think the state court ever essentially found that he wasn't blacked out. I got the impression from reading the state court record that they said, look, this blackout or amnesia only seemed to crop up when they would ask him questions about the crime that they were investigating, and they pointed out that he had a very good recall of other things. He remembered, for example, that morning that he'd fixed his son eggs and hot dogs, that he'd taken him to daycare, that he'd gone to a job where he was doing gardening, and he seemed to be a pretty good historian up to the point that they said, well, let's talk about the last half hour. And my impression from reading the record, yours may be different, was that the state court said he was being evasive about one subject matter. I don't think that's precisely what they found. I think they found that they believed he knew and understood his rights. I don't think they were really considering the subject of the blackout when it comes to the understanding of the rights, and I think that's the important thing. The state court never said, oh, we don't find that he was blacked out. They simply did not acknowledge that with regard to his knowing and understanding of his rights. And again, the other point is, this is an issue that had a very simple remedy at the time. At the time, someone tells the police, I don't understand my rights. The police should be under an obligation to tell them what their rights are. It's like what Justice Sotomayor said in her dissent in Berkeleys, that we can't live in a society where you think about the negative ramifications that advising someone of their rights, again, has on the judicial system. You have to evaluate whether someone understands their rights, and if they say, I don't understand my rights, you should take that minimal step of reconfirming that they understand their rights. Counsel, you have about a minute and a half left. You may wish to reserve. Yeah, I'll reserve the remainder of my time for rebuttal. Thank you. We'll hear from the state. Thank you. May it please the Court, John Sampson, Assistant Attorney General for the Respondent Appellee. As this Court is aware, this case comes before the Court under EDPA, and the deference owed to the state court adjudication, the petitioner must prove the state court decision was unreasonable. But there's also another deference that's owed to the trial court's findings of fact. Those findings of fact are presumed correct unless the petitioner rebutts those findings by clear and convincing evidence. And the trial court here, after a hearing, found as fact that the police did advise Mr. Holland of his rights, that he stated he understood, he acknowledged and understood them, and that he knowingly, intelligently, and voluntarily waived those rights. And the knowing and intelligent part of that finding is a finding of fact that is binding on this Court unless it's overcome by clear and convincing evidence. The state court did address the issue of the drugs in Mr. Holland's system. The state court of appeals, at Excerpts Record 31, specifically acknowledged Mr. Holland's arguments that he was, under the totality of the circumstances, his lack of sleep, his drugs in the system, that his waiver was not knowing and voluntary. The court rejected that argument. And they specifically pointed out at Excerpts Record 31 that he claimed to have blacked out and had a vague memory of the events surrounding the time of the shooting. There's no indication, however, that he blacked out when he was read his rights. And in fact, just prior to being read his rights, when the police chased him, caught him, he responded and said, Why are you stopping me? I'm just out jogging. And then immediately, or soon after being read his rights, he responded to a question about when they asked him, Do you know why you were stopped? And he said, It was about the shooting. How was the kids? There's no evidence that he was actually blacked out when he was read his rights. And the fact that there's no evidence defeats this claim because, at this point, it's the petitioner's burden to overcome the state court's finding of fact. Is there any evidence in the record that he had ever, before that date, been read rights and waived rights? It's not in the record that I'm aware of, Your Honor. I don't know if he had a prior criminal history or not. The fact, though, that the police officer testified that she read from the card everything except for the final question, Are you willing to waive these rights? That was in the record. The testimony that he acknowledged those, either by a statement or by nodding his head yes and no, that was in the record. And under the Supreme Court's decision in Burgess v. Tompkins, the fact that he nods is enough to show that he understood his rights. And so the state court decision here was not an unreasonable application of Supreme Court precedent, since this case is almost exactly like Burgess v. Tompkins. Was there any medical evidence in the record that the state court had that addressed the effect of the drugs on his system? No, Your Honor. The only evidence was that there was a level of marijuana and PCB found in his system, but there was no medical testimony as to how that may have actually affected him. There was testimony from a detective talking about the vagueness of Mr. Holland's answers and the fact that he did not recall the time of the shooting but could recall all other events. And in that detective's experience, that is not a blackout. That is the person is trying to be evasive and doesn't want to actually admit to having committed the crime. And that's the only evidence we have. We have no medical testimony saying that the use of the drugs prevented him from being able to understand what occurred. And at this stage of the proceedings, because there is a finding of fact and there is the deference owed to the state court, it's the petitioner's burden to prove that the drugs actually prevented him from being able to understand his rights and being able to knowingly, intelligently, and voluntarily waive those rights. Counsel, there's an issue. I'm sorry, Judge. You said it's his burden to prove. I'm sure it was his burden to prove it in the state court. Yes, Your Honor. Because the federal district court here couldn't take evidence about that. That is correct, Your Honor. The reasonableness of the state court decision must be based on the evidence that was before the state courts and cannot consider new evidence until that district court finds that the state court decision was unreasonable. Thank you. And Judge O'Scanlan, I'm sorry, I apologize. No, no, no problem, Judge. I was just going to raise the question of Mr. Kennedy's brief. He didn't argue it in oral argument, but in his brief he talks about the fact that Judge Kunauer did not look at the transcript. What's your response to his challenge on that issue? Your Honor, it's true that the transcript was not provided. It is not required to have a transcript provided. The judge can look at the evidence that was – can look at the state court adjudication, can look at the records that were provided and made a reasonable determination that the state court decision was not unreasonable. If there was an error in not ordering the – or not having us produce the transcript, if there was an error in the district court because of that, it's harmless error because even if you look at the transcript, that is not sufficient to show that the state court decision was unreasonable and it's not sufficient to overcome the state court's finding of facts. And the judge below did have the written findings of fact, which essentially encompass everything that was in the transcript on this issue. And so really the focus by this court and by the district court should have been on those written findings of fact and the only thing that the transcripts would do would be to show whether or not those findings were supported. Has there been any dispute raised as to the facts? I know there's a dispute about what effect should be given to the facts, but has a factual dispute been raised at this point in any stage in the litigation, the post-conviction litigation? No, Your Honor. There's been no argument that as can be raised in some habeas cases that the facts, there's no argument like that. He had a full hearing in front of the trial judge on the issue. There's no argument even. I don't believe the petitioner has actually raised an issue in his appellate brief saying that the case should be reversed because the district court judge did not have the transcripts. He merely pointed that out and he provided those to this court. And we have no objection to this court reviewing the transcripts and making a determination. But there's no, I don't believe there's ever been an argument that there's a lack of factual development. Counsel, anything further? No, Your Honor. We'd ask that the court affirm. Mr. Kennedy, you have some reserve time. One issue that came up on the Attorney General's argument was that the court considered the drugs in his system. But I'd like to point out that that has to do with the issue of his actual statements that he made to the authorities. If you read what the state court said, it says he argues that the totality of the circumstances indicates he was worn down by the lengthening questioning, was impaired by the drugs in his system, et cetera, et cetera. That is one of the factors that affects his waiving his rights. But it doesn't have to do with the first issue, which is that he was impaired by the drugs when he was initially read his rights and was blacked out and didn't understand his rights. So the state court's holding was not that he was not blacked out at the time that he was read his rights. And again, the point is that this is all a totality of the circumstances analysis. And when you take out that one giant factor, that weakens all these other points. But the fact is that all of these points are significant to indicating that he didn't understand his rights. There's just that one other large factor that the state court didn't consider. And the other thing that I'll just point out is that I think that the state court's decision is not very credible. As the government pointed out a couple times, that the trial court's holdings found it undisputed that he stated that he understood his rights, which is simply not true. Well, it may or may not be true that he stated he understood his rights, but that's not an undisputed fact. The one witness who testified to that was the police officer who said, I don't know if he said it or not. So again, I think that this is a very simple case where there was a very simple remedy and the police didn't follow it. And because of that, I think Mr. Holland is entitled to habeas ruling. Thank you, counsel. The case just argued will be submitted for decision, and the court will take a brief recess.
judges: O'scannlain, Gould, Burns